UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>23. ANGEL CALDERON,<br>a/k/a "King Bam"<br><br>Defendant | No. 19-CR-10459-RWZ |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR RECONSIDERATION OF THE COURT'S MAY 1, 2020 ORDER OF DETENTION**[1]

The government hereby opposes the Motion for Reconsideration (Dkt. 1495) filed by Angel Calderon ("Calderon" or "Defendant"), which asks the Court to release him from Wyatt Detention Facility while actively infected—and potentially contagious—with the novel coronavirus. The Court has already considered Defendant's potential vulnerability to COVID-19, and nevertheless ordered him detained because that risk could not outweigh the significant danger Defendant poses to the community. (Dkt. 833). That balance continues to warrant detention, as the defendant is only mildly symptomatic, showing strong vital signs, and well on his way to recovery.

While styled as a motion for reconsideration due to changed circumstances, none of the critical factors that originally led this Court to conclude that Defendant posed a significant danger to the community have changed, and his risk to the community has only grown. As such, Defendant's motion should be denied.

---

[1] During Defendant's April 30, 2020, detention hearing, the government submitted exhibits in support of detention. The government hereby incorporates those exhibits into this opposition. References to specific exhibits are by exhibit number and page or paragraph (Ex. __ ¶ __). The government assumes the Court has access to the defendant's criminal history through the pretrial services report.

## BACKGROUND

The Defendant is charged in Count One of the Indictment, alleging Conspiracy to Conduct Enterprise Affairs Through a Pattern of Racketeering Activity, in violation of 18 U.S.C. § 1962(d). See D. 1.  As found by the Court, "the government has overwhelming evidence that Mr. Calderon is a high-ranking member of the Latin Kings, holding a prominent leadership position ('Inca') in one chapter of the gang." Ex. 1, ¶132; Dkt. 833 at 2.  As detailed in the government's opposition to Defendant's original motion for release (Dkt. 823) and as established during the April 30, 2020 detention hearing, Defendant has been thoroughly involved in numerous violent conspiracies within the Latin Kings: he was an active participant in the conspiracy to murder Angel Roldan; assisted in the retaliatory beating of Victim 1 due to his suspected cooperation; threatened and directed violence against witnesses, rival gang members, and insubordinate Latin Kings members; and supplied and employed firearms.  He has pending charges for holding a loaded gun to a victim's face and threatening to kill her, has multiple firearm and assault convictions (some of which were committed while on probation for other offenses), and was participating in the instant gang activities while under court supervision and wearing a GPS bracelet.  *See* Dkt. 833 at 2.

The Court has already concluded, by clear and convincing evidence, that, "[g]iven Mr. Calderon's troubled history and the nature of the violent criminal gang of which he was undoubtedly a high-ranking member, and the uncontroverted evidence that he was committing serious crimes," no conditions could ameliorate the danger to the community if he were released. *Id*.

## LEGAL STANDARD

A defendant must be detained pending trial if, after a hearing, the court determines that "no condition or combination of conditions will reasonably assure the appearance of the person as

2

required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e).[2] In determining whether any conditions of release will reasonably assure the safety of any other person and the community, the Court must consider the factors set forth in 18 U.S.C. § 3142(g), which include: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence; (2) the weight of the evidence; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger that the defendant's release would pose to any other person or the community.

## ARGUMENT

1. *COVID-19 Cannot Justify This Dangerous Defendant's Release*

The COVID-19 pandemic—while undoubtedly serious—cannot not provide a basis for Defendant's release.  First, the Court expressly considered Calderon's health concerns in light of COVID-19 at the time of the Order of Detention: "Although he suffers from obesity, which the court understands indicate that he is at a higher risk for serious illness if he contracts the virus, the court finds that in the particular circumstances here, this factor does not overcome the dangers inherent in his release."  Dkt. 833 at 2.  The pandemic and Defendant's potential risk are simply not changed circumstances warranting reconsideration of the Court's order.

Second, any concerns about the hypothetical heightened risks Defendant faced if infected, or the probabilities of infection based on Wyatt's current case count, have all been mooted by the reality that Defendant has now contracted the disease and is recovering without complication and with only minor symptoms.  According to Wyatt, Defendant tested positive for the coronavirus

---

[2] As noted by the Senate Judiciary Committee: "This reference to safety of any other person is intended to cover the situation in which the *safety of a particular identifiable individual, perhaps a victim or witness*, is of concern, while the language referring to the safety of the community refers to the danger that *the defendant might engage in criminal activity to the detriment of the community*."  S. Rep. No. 98-147, at 39 (1983) (emphasis added; footnotes omitted); *see also United States v. Patriarca,* 948 F.2d 789, 792–793 (1st Cir. 1991).

around November 14, 2020 and has continued to have strong vital signs and minimal symptoms (such as congestion and an occasional cough).

The government is glad to hear that the defendant is recovering from his mild infection, but any risk of reinfection while at Wyatt is still far too speculative to warrant release. *See Minyetty*, No. 20-cr-10004-DJC, Dkt. 86 ("[A]ny risk of reinfection appears, based upon this record, speculative at best"); *see also United States v. Billings*, 2020 WL 4705285, at *5 (D. Colo. Aug. 13, 2020) ("At this point, however, the possibility of reinfection, if not impossible, is strictly hypothetical."); *United States v. Shahbazpour*, 2020 WL 3791633, at *2 (N.D. Cal. July 7, 2020) (relief denied because "there is no evidence-based consensus [regarding the risk of reinfection] among medical professionals").

Finally, given the timing of his November 14 diagnosis, Defendant may still be contagious and releasing him at this stage would recklessly endanger the community.[3]  Courts, including in this District, faced with motions from COVID-positive defendants have denied release because of the obvious risks to both detainees and the public.  For example, in *United States v. Minyetty*, the Honorable Judge Casper denied a defendant's motion to review a detention order after the defendant tested positive for COVID-19.  No. 20-cr-10004-DJC, Dkt. 86 (D. Mass. June 29, 2020). In ordering the defendant detained, the court held: "There is no basis in this record to indicate that [the defendant] is not receiving appropriate medical care, and there would be a public health concern about his proposed release plan even if the other factors under Section 3142(g) did not weigh against release as this Court finds that they do here." *Id*. (internal citations omitted); *see also United States v. Basilici*, No. 19-cr-10245-ADB, Dkt. 277 (denying renewed motion for

---

[3] Releasing defendants simply because of their COVID-positive status (without regard to actual experience of health issues or complications) would create a dangerous incentive for detainees to become deliberately infected in order to facilitate their release.

release for COVID-positive inmate who posed danger to the community because his well-controlled COVID-19 case did not warrant release). Similarly, in *United States v. West*, No. ELH-19-364, 2020 WL 1820095 (D. Md. Apr. 10, 2020), the district court denied a COVID-19-positive inmate's appeal of his detention order:

> Removing West from isolation and placing him in home confinement may actually facilitate the spread of the virus. If West were released, this would risk transmittal of the virus to the [detention facility] staff involved in his transfer, his third-party custodian, and anyone who visits him while he convalesces…. And, were West to disregard the Court's order of home confinement, he could unwittingly spread the virus to complete strangers. Because of West's present condition, his release might actually pose a distinct and significant risk to the community.

The risk the Defendant posed to the community would only be exacerbated if he were released while still contagious.[4]

The Government appreciates the gravity of the COVID-19 pandemic and acknowledges that it presents a serious national and state public health emergency. However, even in the midst of this pandemic, the factors set forth in 18 U.S.C. § 3142 still guide the Court in determining, on a case-by-case basis, whether pretrial release is appropriate, and as the evidence adduced at the Defendant's detention hearing amply showed, he poses a danger to the community and no conditions or combination of conditions can adequately address these risks. Nor are these risks outweighed by the Defendant's mild COVID-19 case, or his speculative risk of reinfection.

2. *Defendant Remains a Danger*

Failing to justify his release with his COVID diagnosis, Defendant next attempts to argue that he has been so transformed during the past months that he no longer poses a threat to the

---

[4] Indeed, according to her own letter, Defendant's girlfriend—with whom Defendant proposes living—has a daughter with undisclosed health issues which require ongoing, in-person, treatment. Defendant fails entirely to address the risk his release will pose to her and the other members of the household. *See* Ex 7 to Mot. (Dkt. 1495-7).

community. Defendant's lengthy criminal history, his pattern of violent and threatening behavior, and his penchant for witness intimidation cannot, however, be ignored simply because Defendant has taken a few positive steps during his detention. To be sure, the government commends Mr. Calderon for his responsible behavior while detained and his willingness to participate in various programs at the facility. And while the Court may properly consider the characteristics of the person under Section 3142(g), it must also consider his history. Here, Defendant has had a lengthy state prison sentence, multiple house of correction sentences, commitment to DYS, multiple stints of probation, and periods of pretrial release in which to demonstrate his interest in changing his ways. Instead, he has done the opposite—most recently engaging in dangerous criminal racketeering activity while on pretrial prelease and wearing a GPS bracelet. The government hopes Defendant's commitment to change is sincere and continues, but submits that his few recent actions do not outweigh his historical commitment to criminality.

Defendant next, remarkably, argues that the government's actions in bringing and prosecuting this case effectively render his proclivities for violence and/or witness intimidation ineffective and irrelevant. Motion at 9. First, defendant claims that, if released, he would be unable to engage in his previous types of violent activities because the Latin Kings enterprise has been decimated by the arrests in this case. As much as the government may share Defendant's wish for that to be so, it is belied by the realities of this enterprise. This Defendant continues to remain a member of the Latin Kings and, in fact, holds a prominent leadership position within the enterprise. While this case has had a significant impact on the framework of the Massachusetts Latin Kings, it has by no means eradicated the organization. What's more, the very structure of the Latin Kings organization contemplates the revolving door between detention or incarceration and the street, with a fully-functioning chapter within the Massachusetts Department of

Corrections.  Nothing about Calderon's arrest, or the arrest of his many co-conspirators in this case, would mitigate the risk the Defendant poses as a member of the Latin Kings.

Second, Defendant appears to claim he would have no ability or incentive to intimidate witnesses because the government's documentary and recorded evidence is so overwhelming that the government need not call any cooperating witnesses in order to convict him.  While the overwhelming strength of the government's evidence may be manifest, this factor only serves to support detention, not undermine it.  *See* 18 U.S.C. § 31423(g)(2).  What's more, this argument ignores that a core tenet of the Latin Kings enterprise is witness tampering and/or retaliation to protect members.  It matters not whether any individual would testify against this particular defendant: any perceived threat to the enterprise, is a threat to all.  In affirming the Protective Order in this case, Judge Bowler recognized that "members of the Latin Kings, including those released from custody, are required to seek out law enforcement paperwork and provide other members with any document that tends to identify members who are cooperating with law enforcement."  *See* Dkt. 1224.  The Detention Affidavit specifies at least ten other instances of witness intimidation undertaken by the Latin Kings (including the termination of Victim 1, in which the Defendant participated), and the Defendant is facing state charges for an eleventh incident in which he held a loaded gun to a suspected witness' head and threatened to kill her and her family.

In light of Calderon's substantial criminal history, assaults on suspected cooperators, threats to suspected cooperators with firearms, participation in recorded discussions about murders, audio/video recordings where Calderon directs lower ranking members to viciously beat members who have violated Latin Kings rules, and his sale of a submachine gun to gang members, there remain no conditions of release sufficient to prevent the Defendant from endangering

witnesses and victims.  Nor is there any reason to believe Defendant would obey any restrictions given that he engaged in serious criminal activity while being actively monitored on pretrial release in another case.   Detention is the only means to ensure the safety of witnesses, victims, and the public.

## **CONCLUSION**

The Defendant presents a significant danger to the community which is not outweighed by his COVID diagnosis or his efforts at rehabilitation thus far.   Because there continue to be no conditions to reasonably assure the safety of the community (including potential witnesses and/or victims), the Defendant must remain detained.

                    Respectfully submitted,

                    ANDREW E. LELLING
                    United States Attorney

By:    */s/ Lauren A. Graber*
        Philip A. Mallard
        Lauren A. Graber
        Assistant U.S. Attorney
        United States Attorney's Office
        1 Courthouse Way, Suite 9200
        Boston MA 02210
        617-748-3309

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                    */s/ Lauren A. Graber*
                    Lauren A. Graber
                    Assistant U.S. Attorney
                    November 30, 2020