UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| VS. ) | CR. No. 19-10459-RWZ |
| ) | |
| ANGEL CALDERON ) | |

**DEFENDANT'S SENTENCING MEMORANDUM
AND REQUEST FOR A VARIANT SENTENCE**

**I     INTRODUCTION**

The defendant in this case, Angel Calderon, has pled guilty to a charge of conspiring to commit racketeering in violation of 18 U.S.C. § 1961(d) as a member of the Almighty Latin Kings and Queens Nation (Latin Kings). The Court must now determine the appropriate sentence for Angel Calderon. He was placed by the government, in the indictment, as number 23 of the 62 members charged in this conspiracy. The first full breath of the government's evidence against this defendant occurred on April 30, 2020 in a detention hearing before Magistrate M. Page Kelly. At the end of the presentation of the evidence Magistrate Kelly gave her assessment regarding the conduct in the conspiracy of Angel Calderon versus many of the other members charged.

> "So all I've been trying to do is just understand the situation, Mr. Calderon's own particular case, what it is, and not get lost in the case as a whole, not get lost in sort of the story of the Kings themselves or the story of gangs themselves, and look at the case individually. And I think... we would, of course agree that there are different people playing different roles, different levels of culpability,...
> The point here is to evaluate Mr. Calderon's...the evidence against him particularly, and again time and again he's not slashing somebody,... He's not shooting somebody. He's not doing the things that the government

> cites to as the real evils of the Kings. And that is a meaningful distinction that should be made on this record and at this hearing. And I think we can all – I think we should all acknowledge that, and – so when you look at Mr Calderon as a whole, I think you can see him as different as certainly those worst examples and so many others in this case."[1]

## II  LEGAL CONSIDERATIONS IN IMPOSING A SENTENCE

In imposing a sentence, a District Court, should "impose a sentence sufficient, but not greater than necessary" to accomplish the sentencing goals advanced in §3553(a)(2) including just punishment, deterrence, recidivism and rehabilitation. See *Rita v. United States*, 551 U.S. 338, 347-48 (2007). In crafting an appropriate sentence, the Court should make sure that the sentence fits not only the offense but the offender and should "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." See *Gall v. United States,* 552 U.S. 38, 52 (2007). "[A] sentencing judge should engage in a ...holistic inquiry,'by considering' a tapestry of factors, through which runs the thread of [the] overarching principle' of parsimony." *United States v. Russell*, 537 F.3d 221, 228 (1st Cir. 2008) (quoting *United States v. Rodriguez*, 731 F.3d 20, 28 (1st Cir. 2008)).

"Consistent with the principle that "the punishment should fit the offender and not merely the crime, this Court has observed a consistent and uniform policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within the limits fixed by law, particularly the fullest information possible

---

[1] Transcript of Detention Hearing, Docket No. 1086, filed July 2, 2020, pages 36-37.

concerning the defendant's life and characteristics. The principle is codified at 18 U.S.C. §3661, which provides that "[n]o limitation shall be placed on the information" a sentencing court may consider "concerning the [defendant's] background, character and conduct," and at §3553(a), which specifies that sentencing courts must consider, among other things, a defendant's "history and characteristics," §3553(a)(1)." *Pepper v. United States*, 561 U.S. 476, 477 (2011)(citations omitted).

### III BACKGROUND OF ANGEL CALDERON

The evidence gathered by the government regarding Angel Calderon has never significantly changed since the date of April 30, 2020 at the Detention Hearing. What has changed is the defendant himself in his remorse for his actions coupled with his extraordinary efforts at rehabilitation while incarcerated. The account of how Angel Calderon came to this juncture in his life is not an unfamiliar one. He grew up in the inner city, his father had left the family. They were financially constrained. When he was four he was sent to live in Puerto Rico till the age of seven. The effect on the defendant was significant for on his return at age seven he was hospitalized for mood disorder

Angel Calderon's memory, today, is still one of a very difficult up bringing. There were beatings and even a sexual assault. There were several placements of Angel in residential treatment centers. He began using alcohol when he was 14 years old.  After his cousin had been murdered, he became affiliated with the Latin Kings who were present in his neighborhood and offered support and companionship when he most needed it.

The folks Angel met along the road of life have come forward to attest to, what they believe, from their experiences with him, is his true character. Leroy Peeples, the Operations Manager for the Boston Centers for Youth & Families has taken the time to present his assessment of Angel. "I've witnessed Mr. Calderon make significant progress in his personal development." He believes that Angel is "...someone who would make a positive pivot in life, if given another chance, something we all need once in a while." Kenneth Araujo, who is a customer support specialist at the Harvard Business School, and who grew up with Angel in the inner city, refers to Angel as a "Family man". He asked Angel to be godfather for his son as he believed he is inherently a good person.

Victoria Hernandez, worked with Angel at the local community center. She asked Angel to help local kids at the community center and saw him commit to that task. She expressed her pride that he has taken full responsibility for his actions. Ricardo Christie, an army veteran, has known Angel for more than 19 years. "In our community he has always played a huge role in keeping the kids out of trouble." Mr Christie states that he owns a improvement company and "would love him to come and work with me." Artaya Cohen writes that Angel is like a brother to her. When he became homeless she took him in to give him a home. She believes that due to Angel meeting Shacara and her children he has become a better person.

The program Director for the Donald W. Wyatt Center has submit a letter in support of Angel. She developed a program that is "...designed to dissuade the youth population from negative peer pressure, and discourage activities that could lead to drug or alcohol abuse, violence or criminal behavior." Detainees from Wyatt are hand

picked to participate in this program by speaking about their own experiences to the youths. She stated that "It has been a pleasure to have Angel Calderon on the Project Aware team."

## IV      DETERMINING THE GUIDELINE SENTENCE

The defendant submitted a number of objections to the initial Presentence Investigation Report (PSI). All of those are renewed here and attached as an Exhibit hereto. Many of these deal with assertions of particular conduct not used to determine the correct offense level. These are objectionable however, as not credible, they though, substantially effect the security level and therefore prison placement for the defendant.

### Determining the Correct Offense Level

The PSI sets out, under ¶92, that a 3 level enhancement should be applied in determining the offense level as the defendant supervised or managed five or more participants in the criminal activity for which he has been found guilty. The defendant asserts that in a RICO conspiracy, like that of a drug conspiracy his relevant conduct under USSG § 1B1.3(a) app note 3, where the scope of activity attributable to a particular defendant is limited to what that defendant agreed to undertake. Here there is no direct nor circumstance evidence supporting that Angel calderon directly supervised five or more persons in specific criminal activity that were part of his predicate acts under RICO.

This position would also be a consistent approach as the major players, i.e. the state wide or east coast leader would come out with a 4 level enhancement and their

conduct involved 60 or more persons. The discovery did not present any one as a member of the chapter (MSB) for this defendant, than one Alexis Velasquez.

The correct offense level, then under ¶ 94 would be 29 and the Total Offense Level under ¶ 97 would be 26.

### Determining the Correct Criminal History Category

¶ 99   The defendant submits that no criminal history points should be assessed on this case. First is that the charged juvenile offense is one that is even less than disturbing the peace in Massachusetts which carries a potential penalty of 6 months. Here, disturbing a public assembly carries a 30 day potential penalty. Therefore under § 4A1.2(e0(1), it would not count for a criminal history calculation. Additionally, it is in juvenile court.. Also, in the discussion of the next juvenile case in the PSI, ¶ 100, Angel is presented as a "resident" at a "treatment facility". The juvenile courts were created to give specialized care in protecting juveniles and assure that they received dedicated consideration in assessing the out come of each case. Also, excluding the point assessed for this case is the age of the matter it originates outside the 5 year window to be countable set forth under § 4A1.2 application note 7. There is no criminal activity asserted against this defendant within five years of 2008/2009.

¶ 100 The defendant again objects to any point being assigned to his criminal history calculation by this juvenile court proceeding set out in this paragraph. These proceeding are held as confidential analogous to a matter being placed under seal in a federal court proceeding. Juvenile courts are separate entities in each state. There are Interstate Compacts just on juvenile court proceedings. It is difficult to envision that any juvenile justice cautions a child appearing in front of them that if a finding of

delinquency is made and a sentence imposed, it could result in an increased sentence in any later federal court proceedings. This case also would be outside the 5 year window to be countable under application note 7 to § 4A1.2.

¶ 101 The defendant objects to inclusion of the point being added to his criminal history score for a matter that was dismissed. The final adjudication in this case on the record it dismissal. Matters dismissed, annulled, null prossed are all thereafter, a nullity and therefore do not result in a score for criminal history points. Here, again, Angel Calderon was a resident in a youth treatment center at the time of this event. In all of these juvenile cases where a potential dismissal is presented through a period of a continuance, it is held out by the juvenile court, essentially, as no harm then no foul. Here this is an offense committed by a 17 year old.  Under application note 1 of § 4A1.1(a) since no adult conviction resulted it should not count.

¶ 106 The defendant objects to the two points added to his criminal history calculation under § 4A1.1(d). This score is asserted to come from Suffolk Superior Court case no. 14-cr-10421. The docket entries for that case clearly show that it was terminated, dismissed on December 10, 2018. There would not then be a basis for this added 2 points to Angel Calderon's criminal history calculation. All of the criminal activity asserted in the discovery as to this defendant are in the 2019 thru 2020 time period.

The defendant's  correct criminal history points therefore are 8 which means he is in category  IV.

The correct guideline range then would be, at offense level 26, criminal history category IV,  which is 92-115 months.

**Request for a Downward Departure Under USSG § 4A1.3(b)**

The defendant is moving, by a separately filed motion, for a downward departure in his criminal history score from that set out in the PSI of VI to one of IV.

## V        CONSIDERATION OF THE FACTORS SET FORTH IN 18 U.S.C. § 3553(a)

Determining the advisory guideline range does not, of course, end the individualized analysis concerning a fair and appropriate sentence. A trial court must give serious consideration to the extent of any departure from the guidelines. *United States v. Gall*, 552 U.S. 38, 128 S. Ct. 586 (2007). As the Supreme Court held in *Gall*, a defendant need not prove extraordinary circumstances for a non-guideline sentence. *Gall* at 595. While the guideline range is the starting point and initial benchmark, a sentencing court may not presume that the guideline range is reasonable and must consider all of the statutory sentencing factors to determine whether a non-guideline sentence is appropriate. *Gall* at 595-597. After *Gall*, the sentencing inquiry, once the court has calculated the GSR, ideally is broad, open-ended and significantly discretionary. *United States v. Vega-Santiago*, 519 F.3d 14, 20 (1st Cir 2008).

Post offense rehabilitation has been recognized as a valid ground for a court to vary from the guidelines and to sentence a person below the advisory guideline range. The United States Supreme Court held that evidence of post arrest rehabilitation may be highly relevant to several of the §35539a) factors. Post arrest rehabilitation may also critically inform a sentencing judge's overarching duty under § 3553(a) to "impose a sentence sufficient, but not greater than necessary to comply with the sentencing purposes set forth in §3553(a)(2)." *pepper v. United States*, 562 U.S. 476, 491; 131 S.

Ct. 1229, 1241 (2011). In *United States v. Martin*, 520 F.3d 87 (1st Cir. 2008), the Court upheld a variance based in part on a defendant's rehabilitation, finding the sentencing court's determination that post arrest behavior and individual circumstances rose to the level that merited weight in the §3553(a) calculus was proper. *Martin* at 94. See also *United States v. Arroyo-Maldonado*, 791 F.3d 193, 199 (1st Cir. 2015).

    The post arrest efforts at rehabilitation are extraordinary by this defendant. The *Martin* court expressed caution when considering rehabilitation efforts. "But separating wheat from chaff is primarily a task for the district court..." *Martin* at 93-94. The task has been made easier here as professional corrections personal have, in written form, expressed their assessment of the sincerity of the efforts undertaken by Angel Calderon. These include the facility warden, the programs director and the mental health coordinator. The other aspect is such efforts did not come instantaneously to the defendant. He had some difficulty adjusting to his incarceration. Such a timeline shows, again, that this has been a genuine commitment. One part of his efforts that would have immediately shown a lack of commitment would have been his participation in speaking with troubled youth in the Rhode Island community.

    The content of the letters submitted in support of the defendant are another basis to give credit to his efforts at rehabilitation. The sentencing commission yearly, collects data on recidivism. Incarceration is punishment but with the hope and/or expectation it will lead to rehabilitation. It is a deterrence to future criminal conduct and protects the public. Another component of the §35539a) is vocational training. Angel Calderon has participated in learning to work in a kitchen for a food serving company.

Programs Completed by Angel Calderon while incarcerated at the Donald W. Wyatt Center include the following

**Basic Kitchen Standard**

**Certificate of Completion Starters Employee Food Safety Training**

**Adjustment to Incarceration**

**Criminal Lifestyles**

**Anger Management**

**Living with Others**

**Anti-Depressant Skills Workshop**

**Dealing with Conflict in Everyday Life Skills**

**Self Awareness**

**Trauma Coping Workshop**

**Impulsivity Workshop**

**Cognitive Behavioral Therapy**

**Mindfulness & Self Awareness**

**Leadership**

**Taking Ownership**

**Stress Management**

**Criminal Behavior Workshop**

**Decision Making Workshop**

**Victim Impact**

**COVID-19 Anxiety Workshop**

**Relapse Prevention Workshop**

**Treatment Plan development**

**Taking Ownership of One's Actions**

**Making Choices**

**Positivity Workshop**

**Decision Making -Two**

**Happiness Workshop**

**Values and Morality Workshop**

**Preventing and Understanding Recidivism**

**Violence Reduction**

**Conflict Resolution**

**S.M.A.R.T. Goals**

**Preparation for Community reentry**

**Preventing the Stigma**

**Preventing Destructive Behaviors While in a Correctional Setting**

**Reducing Impulsivity While In Problematic Situations**

**Listening Skills**

**Interpersonal Effectiveness**

**Taking Accountability and Responsibility for Poor Decision Making**

Angel Calderon has also participated in various mental health programs offered at Wyatt by a mental health coordinator. The assessment of those programs and his participation, will be submitted under seal to the court.

The combination of family and friends support, along with the extraordinary commitment to become a better, more stable person would allow the court to vary

substantially from the advisory guideline range in this case under the in accord with the provisions of 18 U.S.C. § 3553(a). Further reason would be the defendant's acceptance of the need and a commitment to obtain mental health counseling.

Lastly, 18 U.S.C. § 3553(a) set out the need to avoid unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct. Using that admonishment as a guide, the defendant submits that he would be higher than the 27 months to be given to the former Massachusetts State Wide Inca, Juan Liberato only because of Liberato's lack of a criminal record. He would be appreciably less in sentencing than Angel Roldan, at 84 months, whom the government tried to portray as a rival. Roldan was, by any measure, through the discovery, shown to be extremely violent and into a myriad of criminal actions.

**VI     CONCLUSION**

For all of the reasons set forth in this memorandum, Angel Calderon respectfully requests that the Court impose a sentence of 48 months.

Respectfully submitted
ANGEL CALDERON
by his attorney

/s/ Stanley W. Norkunas
Stanley W. Norkunas
150 Westford Road, Unit 26
Tyngsborough, MA. 01879
(978) 454-7465
attyswn@msn.com

## **CERTIFICATION OF SERVICE**

     I hereby certify that a copy of the within document was filed through ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on March 29, 2022.

                                      /s/ Stanley W. Norkunas
                                      Stanley W. Norkunas