UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANGEL CALDERON,<br>   a/k/a "King Bam"<br><br>   Defendant | Criminal No. 19-CR-10459-RWZ |

**MEMORANDUM IN SUPPORT OF SENTENCING RECOMMENDATION**

The government submits the instant memorandum in support of its recommendation for **120 months of incarceration** for the Defendant, Angel CALDERON, a/k/a "King Bam."[1] This recommendation reflects the seriousness of the offense, the need for deterrence and punishment, and is sufficient but no greater than necessary to accomplish the goals of sentencing.

**THE ADVISORY SENTENCING GUIDELINES**

The government agrees with the offense level provided U.S. Probation, which calculated the offense level in the final Presentence Report to be 27 (PSR ¶¶76-97). The government's calculation set forth in the plea agreement stated a total offense level of 27 (D. 2018). The government's calculation differs from probation in that the government applies the role adjustment prior to the application of the grouping principals. Additionally, Probation applied a +3 offense role adjustment (PSR ¶92), while the government set forth a +2 role adjustment in the Plea Agreement (D. 2018).

The Defendant challenges the role adjustment set forth by Probation, and claims that a +2

---

[1] This is based upon a Offense Level 27, Criminal History Category V, as set forth in the final PSR. The government, consistent with the plea agreement, will adjust its recommendation depending on the Court's rulings on certain objections made by the Defendant.

1

offense level more appropriately reflects his leadership and role (D. 2434, p. 5-6). The government agrees with the Defendant to the extent that the Probation calculation of role conflicts with the Plea Agreement, but the government believes that Probation accurately set forth the evidence. The Defendant was an Inca of the Morton Street Bricks Chapter, and the membership of the Chapter was not known to be as extensive as, by comparison, the New Bedford Chapter or the Devon Street Kings. As such, the government does not believe that the Defendant's direct leadership entailed command over "five or more participants" in his Chapter "or was otherwise extensive" (USSG §3B1.1(b)) in the context of the Latin Kings, and therefore believed the +2 role adjustment was more suitable.

With a criminal history score of 11, the criminal history category is V (PSR ¶¶ 105-107), the guideline sentencing range ("GSR") calculated by Probation is 120-150 months (PSR ¶149).

The Defendant challenges the criminal history calculation claiming it to be in fact category IV, and also seeks a downward departure to category III based on the inclusion of certain juvenile convictions (D. 2443). The government acknowledges that 2 points derive from the Defendant's juvenile record (PSR ¶¶99-100), and that they were accumulated years ago. While the Court may be inclined to discount the points related to these convictions, the government suggests that this Court should still consider those convictions for their serious substance and context, and not solely as a basis to increase to the criminal history category.

## ARGUMENT

The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in § 3553(a)(2). Among those factors are the "nature and circumstances of the offense," promoting respect for the law, and providing just punishment. See 18 U.S.C. §

3553(a)(2)(A). The sentence must also afford "adequate deterrence" for both the defendant and others. See 18 U.S.C. § 3553(a)(2)(B) (the court may impose a sentence "to afford adequate deterrence to criminal conduct"). Lastly, the sentence must protect the public from the further crimes of the Defendant, and the violence that the Defendant brought to bear through his membership in the Latin Kings. See 18 U.S.C. § 3553(a)(2)(C) ("protect the public from further crimes of the defendant"). Consideration of the § 3553(a) factors demonstrates that a sentence of 120 months is sufficient, but not greater than necessary, to meet the goals of sentencing.

### A.     Nature and Circumstances

This Court is familiar with the nature of the Latin Kings enterprise and the violent conduct committed by its members. The sentence imposed by this Court should reflect the Defendant's role in the Latin Kings organization, which used violence and fear as a tool to target those in the community, exact revenge, instill fear and enforce a code of silence concerning crimes committed by its members. See PSR ¶¶45-102. Among this organization, the Defendant served as Inca, or leader of the Boston-based Morton Street Bricks Chapter, issuing directives, and organizing the gang's violence as part of the larger chain of command. See PSR ¶45. This Defendant is an extremely serious and enthusiastic member of the Latin Kings, and his crimes were proportionate to that enthusiasm.

Given the sprawling membership, and numerous individuals at issue, the Defendant was particularly concerned with the discipline and adherence to the rules of the gang. The Defendant was captured on video ordering multiple beatings of other members for violations of the gang's rules. See PSR ¶61. The Defendant's testimony was presented during the trial of Angel ROLDAN for violating the rules of the Latin Kings. Later, when State Leader, Juan LIBERATO, sought to organize retaliation against ROLDAN for his insubordination, it was CALDERON who was planned to be the potential shooter. See PSR ¶¶61-71. The Latin Kings looked to the Defendant

in these serious matters of violence, and the Court should take their word for it.

The Defendant himself also committed a serious aggravated assault of an innocent victim in June 2019. Time and again this Court has seen certain acts of violence being committed against innocent victims who would dare speak out against the Latin Kings, and this is yet another incident terrifying incident of senseless violence. The facts are simple: the Defendant run up to the victim, pulled out a black firearm, chambered a round and put it to her face. PSR ¶52. The Defendant then stated, "you've been snitching" "I'll kill you and your brothers." PSR ¶52. The Victim gave a detailed description of the Defendant and a second witness corroborated the account. See PSR ¶¶54-55. This chilling incident of street violence against an innocent victim bespeaks the necessity of a 10-year period of incarceration. Violence of this nature instills fear in a community because of the capacity for the gang to retaliate against those who would speak out against them. Indeed, the message sent by the Defendant was that the victim was being targeted because they believed the victim was "snitching" to the police.

Beyond the leadership and orchestration of violence committed by the Latin Kings, the Defendant also conspired to murder an individual through a "hotshot." PSR ¶57. This victim was being targeted because they believed the victim played a role in the murder of "JP", which is a relative of the Defendant. As the Defendant brags to CW-3, "We're gonna get his ass [expletive] killed my cousin, we're gonna get his ass. Fact." PSR ¶57. This was yet another serious and potentially deadly incident that the Defendant played a role in. See PSR ¶57.

In sum, the Defendant was a leader in a violent organization, and personally took part multiple serious violent incidents. The nature and circumstances of the Defendant's crimes and his role in leading this violent enterprise negatively affected the community he lived and the various persons who were attacked. All told, the nature and circumstances justify a sentence of 120 months.

**B.    Criminal History**

The Defendant has a lengthy criminal history that commenced early in his life with multiple for violence convictions in his teenage years. Among the highlights of his juvenile criminal record include an assault of the staff at a youth program by "slapping one across the fact and kicking the other with his sneaker." PSR ¶100. The Defendant was subject to two other arrests as a juvenile for which he was not convicted. Later, when 17 and committed to DYS, the Defendant refused to comply with the rules of the facility.  Ultimately multiple staff members responded to escort the Defendant to his room.  In response, the Defendant "became overly aggressive and physically struck a staff member in the face."  PSR ¶101.  The Defendant was restrained and "the staff member sought medical attention." PSR ¶101. The Defendant violated probation, but the Defendant was not sentenced.

Upon reaching 18, the Defendant continued to be violent and was charged with Assault and Battery.  See PSR ¶102. The Defendant was put on probation, and he violated that probation. He was then sentenced to 6 months in jail. See PSR ¶102.

The crimes continued. While on probation for assault and battery, the Defendant was arrested for carrying a firearm.  See PSR ¶103.  He was found guilty, and sentenced to 18 months in jail.  See PSR ¶103.

Less than 30 days after completing probation for his first gun conviction, the Defendant was arrested again for carrying a firearm. See PSR ¶104. The Defendant was convicted and sentenced to 3 to 4 years in state prison, followed by probation.  See PSR ¶104.  While in prison, the Defendant received 8 disciplinary reports for fighting, assaulting inmates, and possessing contraband such as incendiary products. See PSR ¶104.

With such a violent criminal history, persistent gang membership, and his directing violence while serving as a leader of a violent criminal enterprise, the Defendant's criminal history

5

suggests that a sentence of 120 months is appropriate.

    **C.**    **Institutional Adjustment and Efforts at Rehabilitation**

The government would like to commend the Defendant for his efforts at rehabilitation. After being alerted by Defense Counsel to the Defendant's work with Project Aware, the government spoke with the Program Director, Major Damaso. Her letter accurately captures her esteem for the Defendant's contributions, and the effort that the Defendant put into this program.

This effort though appears to have been significantly undermined by what the Warden later reported concerning disciplinary infractions committed by the Defendant. These include a violation as recently as November 2020, where the Defendant received 15 days for interfering with a staff member and disrupting the security of the institution. See D. 2434-2, p. 4.  Of note, this November 2020 incident took place after the letter authored by Ms. Damaso.

    **D.**    **Public Protection and Deterrence**

Given the organized violence at issue in this case, and the Defendant's insistence in choose crime and violence, the Court must ensure that the Defendant is specifically deterred from committing crimes in the future and ensure that the public recognizes such crimes merit serious punishment as well.  As a leader in the Latin Kings, responsible for directing violence against persons believed to be cooperating with law enforcement, the Defendant's conduct merits a significant sentence.

The Defendant has served lengthy sentences for firearms convictions. The conduct in this case involves similarly firearms and the use of firearms in assaulting innocent citizens.  Those prior sentences did not deter him, and shortly after release the Defendant rejoined the Latin Kings, played a significant role in the politics of the gang, and became a leader of his local Chapter.  As such, it is necessary to impress upon the Defendant that leadership and continued association with the Latin Kings, destruction of the community through the crimes committed by the gang is

unacceptable in the future. A sentence of 120 months is one that will specifically deter the Defendant from assisting this organization in the future and remove him from the enterprise for at least the period of incarceration. The government would also suggest the Court impose an exclusionary zone around Boston to keep the Defendant from returning to his historical criminal epicenter, and reconnecting with negative influences in that area.

General deterrence must also be considered, and this Court should be mindful of the message that the sentence will send to violent offenders, particularly gang leaders removed from the street who would direct others to attacks persons who provide information to law enforcement. A 120-month sentence sends a message to leaders, gang members, and violent offenders that swift punishment and imprisonment for multiple years await them if they choose to organize and commit violence.

Moreover, the Court must also take this opportunity to protect society from this Defendant and the potential for future crimes, punish him for the various violent acts that took place under his auspices, and for overseeing violence being committed against others on behalf of this violent organization. A 120-month sentence is the proper means to accomplish all these goals of sentencing.

## **CONCLUSION**

Due to the nature and circumstances of the crime, and because deterrence (both general and specific), respect for the law, and just punishment are all critical sentencing factors for this Defendant, the Court should impose a sentence of 120 months.

Respectfully submitted,

                              WILLIAM F. ABELY,
                              Acting United States Attorney

By:

                              */s/ Philip A. Mallard*
                              PHILIP A. MALLARD
                              Assistant U.S. Attorney
                              United States Attorney's Office
                              1 Courthouse Way, Suite 9200
                              Boston MA 02210
                              617-748-3674

## CERTIFICATE OF SERVICE

     I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).


                              */s/ Philip A. Mallard*
                              PHILIP A. MALLARD
Date:  April 3, 2022                Assistant U.S. Attorney